**ORIGINAL**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUN 21 2007

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| County Seat Stores, Inc. | § | CASE NO. 99-10010-cb |
| | § | (Bankr. S.D.N.Y.) |
| Debtor. | § | |
| | § | |
| | § | |
| Robert V. Cataldi | § | |
| | § | ADVERSARY NO. 05-03694 |
| | § | 3:07-CV-0774-B |
| Plaintiff, | § | |
| - against - | § | |
| | § | |
| Olo Corporation of New Jersey, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION ON
### MOTION TO WITHDRAW REFERENCE

Before this Court is a Motion to Withdraw Reference filed by Robert V. Cataldi ("Cataldi").

Pursuant to Rule 5011.1 of the Local Rules for the United States Bankruptcy Court for the Northern

District of Texas, this Court held a status conference with the parties on May 21, 2007, and provides

this report and recommendation to the District Court in connection with that Motion to Withdraw

Reference.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 1999 (the "Petition Date"), County Seat Stores, Inc. (the "Debtor") filed a

voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"),

thereby commencing the above-referenced bankruptcy case (the "Case"). The New York Bankruptcy

Court appointed a Chapter 11 Trustee, Alan Cohen (the "Chapter 11 Trustee"), on March 12, 1999.

**Report and Recommendation**

On July 14, 2000, the Chapter 11 Trustee filed an adversary proceeding in the New York Bankruptcy Court against Olo Corporation of New Jersey ("Olo") and Victor Harary ("Harary"), the President of Olo, (the "Adversary Proceeding"), seeking to recover assets of the Debtor's estate under state law and Sections 548, 549, and 550 of the Bankruptcy Code (the "Code").[1]

On November 21, 2003, the New York Bankruptcy Court confirmed a Plan of Liquidation for the Debtor (the "Plan"). The Plan vested the Chapter 11 Trustee with the power to liquidate the Debtor's assets. On December 23, 2004, the Chapter 11 Trustee sold the claims asserted in the Adversary Proceeding to Cataldi. However, Cataldi never sought to be substituted into the Adversary Proceeding as the real party-in-interest. Accordingly, even after the assignment of the claims to Cataldi, the Chapter 11 Trustee remained the named plaintiff in the Adversary Proceeding.

In the interim, on November 19, 2003, the New York Bankruptcy Court issued an opinion directing the dismissal of the claims against Harary and the transfer of the remaining claims against

---

[1] The Adversary Proceeding arises out of a pre-petition contract between the Debtor and Olo. According to the terms of the contract, Olo was to manufacture clothing for the Debtor to sell in its retail stores. The causes of action originally pled by the Trustee are no longer the relevant claims to be analyzed. At a hearing on April 3, 2007, the Court ordered Cataldi to file a Motion to Substitute and an Amended Complaint. On April 18, 2007, Cataldi filed a motion to substitute as plaintiff in the Adversary Proceeding. The Amended Complaint was filed on April 30, 2007. In Cataldi's Amended Complaint (the "Amended Complaint"), Cataldi alleges that the Debtor paid $700,006.86 post-petition for goods Olo never delivered. The $700,006.86 was paid pursuant to eight purchase orders submitted by the Debtor to Olo. Five of the purchase orders were submitted pre-petition and three were submitted post-petition. Count 1 of the Amended Complaint seeks to recover these funds under Sections 549 and 550 of the Code, alleging that the Debtor's payment for goods not delivered was not a transfer in the ordinary course of business. Counts 2, 4, 6, and 7 of the Amended Complaint seek to recover these same funds under state law theories of fraud, misappropriation, conversion, and unjust enrichment, respectively. The Amended Complaint also alleges that the Debtor paid Olo $300,000.00, within one year prior to the Petition Date, as an advance on future orders. Count 3 of the Amended Complaint seeks to recover the advanced funds under Sections 548 and 550 of the Code. Count 4 of the Amended Complaint seeks to recover the advanced funds under the state law theory of misappropriation. Finally, the Amended Complaint alleges that the Debtor mistakenly wired Olo $350,235.63 after the Petition Date. Count 5 of the Amended Complaint seeks to recover the wired funds under Sections 549 and 550 of the Code. Counts 6 and 7 of the Amended Complaint also seek to recover the wired funds under state law theories of conversion and unjust enrichment, respectively.

Olo to the Northern District of Texas.[2]  However, the New York Bankruptcy Court failed to sign an order granting relief until March 25, 2005.  Also on that same date, the New York Bankruptcy Court entered a final decree in the underlying bankruptcy case, concluding that the Debtor's bankruptcy case had been fully administered, which enabled the Debtor's bankruptcy case to be closed.

Upon the transfer of the Adversary Proceeding to the Northern District of Texas, it was assigned to the Honorable Sam A. Lindsay, United States District Judge.  On October 11, 2005, Judge Lindsay entered an Order of Reference in the Adversary Proceeding, referring it to the bankruptcy court, where it was subsequently assigned to the undersigned judge on October 20, 2005.

On October 31, 2005, an Order to Appear and Show Cause (the "Show Cause Order") was issued, requesting that counsel for the Chapter 11 Trustee (still the named plaintiff) appear and show cause why the Adversary Proceeding should not be dismissed given that the Debtor's underlying bankruptcy case had been fully administered and closed in the Southern District of New York.  A hearing was held on the Show Cause Order on November 22, 2005.  Cataldi appeared at this hearing and advised the Court that he had purchased the claims asserted in the Adversary Proceeding from the Chapter 11 Trustee and that he intended to represent himself in the Adversary Proceeding.  The Court set the Adversary Proceeding for trial in March, 2006.

---

[2] Prior to the entry of the order to transfer the Adversary Proceeding to the Northern District of Texas, Olo and Harary both filed motions to dismiss the Adversary Proceeding under Federal Rules of Civil Procedure 12(b)(1), (3), and (6), made applicable to the Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b), and for improper venue.  The New York Bankruptcy Court denied the motions to dismiss on January 3, 2001.  Olo and Harary timely appealed to the United States District Court for the Southern District of New York (the "New York District Court").  On November 30, 2001, the New York District Court vacated the New York Bankruptcy Court's order on the motions to dismiss and remanded the matter to the New York Bankruptcy Court, which then granted Harary's motion to dismiss and ordered the claims against Olo to be transferred to the Northern District of Texas pursuant to a forum selection clause in the parties' contract.

On January 1, 2006, Olo filed a Motion to Dismiss (the "Motion to Dismiss").[3]  The Court originally set the Motion to Dismiss for hearing on March 29, 2006.  However, on February 9, 2006, Cataldi informed the Court that he had suffered a stroke.  Cataldi sought a temporary adjournment of the proceedings in order that he might receive medical treatment and recover from the stroke. With Olo's agreement, this Court reset the hearing on the Motion to Dismiss.  After several telephonic status conferences with Cataldi (whose wife would speak on his behalf due to his continuing medical problems) and counsel for Olo, the Court concluded that it could not continue to delay the disposition of the Adversary Proceeding.  Accordingly, at yet another telephonic status conference on December 5, 2006, the Court advised Cataldi that it could no longer delay the disposition of the Adversary Proceeding indefinitely, and scheduled an in-person hearing on the Motion to Dismiss for April 3, 2007, thereby giving Cataldi several more months to either recover sufficiently to attend the hearing on his own behalf or to find counsel to represent him at the hearing.

On March 29, 2007, Cataldi, finally represented by counsel, filed a Motion to Withdraw Reference.  In the Motion to Withdraw Reference,[4] Cataldi seeks a withdrawal of the reference of his claims against Olo – but not for any of the reasons for which an order of reference is typically withdrawn.  Rather, Cataldi seeks a withdrawal of the reference of the Adversary Proceeding in hopes that he will avoid a statute of limitations problem that he fears will arise if his Amended Complaint against Olo is dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b).

---

[3] Olo sought dismissal on six grounds: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the persons named as defendants, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, and (6) failure to state a claim upon which relief can be granted.

[4] On April 30, 2007, Cataldi filed an Amended Motion for Withdrawal of the Reference (the "Amended Motion to Withdraw Reference").  The relief requested in the Amended Motion to Withdraw Reference is the same as the relief requested in the original Motion to Withdraw Reference.  However, the Amended Motion to Withdraw Reference contains additional legal authority in support of Cataldi's contentions.

**Report and Recommendation**                                                        **Page 4**

Specifically, Cataldi contends that if his Amended Complaint is dismissed such that he must re-file a new lawsuit against Olo in a court of competent jurisdiction, his claims against Olo will be barred by limitations.  Cataldi contends that withdrawal of the reference of the Adversary Proceeding is appropriate under these circumstances because diversity jurisdiction exists between the parties, which would allow the Adversary Proceeding to be heard by the District Court even if bankruptcy jurisdiction is lacking.

At the April 3, 2007 hearing on the Motion to Dismiss, Cataldi's new counsel agreed that Cataldi must formally seek to be substituted as the named plaintiff in the Adversary Proceeding. Counsel for both parties agreed that only one issue raised in the Motion to Dismiss remained for resolution by this Court – *i.e.*, whether this Court has subject matter jurisdiction over the claims asserted in the Adversary Proceeding.  Without objection by Olo, the Court continued the hearing on the Motion to Dismiss in order to allow: (i) Cataldi time to file a motion to substitute and to amend the Complaint, (ii) Cataldi's new counsel to brief the subject matter jurisdiction issue raised by the Motion to Dismiss, and (iii) Olo to address the Motion to Withdraw Reference.

Cataldi filed a motion to substitute as plaintiff on April 18, 2007 and the Amended Complaint on April 30, 2007.  The motion to substitute was granted without objection by Olo.  On May 21, 2007, the Court commenced a hearing on the Motion to Dismiss and held a status conference on the Motion to Withdraw Reference.  At the outset of the hearing, counsel for Olo announced that he was withdrawing his motion to dismiss for lack of subject matter jurisdiction in light of the repled claims contained in the Amended Complaint.  However, Olo's counsel further advised the Court that he intended to file another motion to dismiss for Cataldi's alleged failure to state a claim in the Amended Complaint upon which relief can be granted.

Notwithstanding the "withdrawal" of the Motion to Dismiss (for lack of subject matter jurisdiction), for the reasons explained more fully below, this Court concludes that it does not have subject matter jurisdiction over the claims asserted in the Amended Complaint and recommends that, if the District Court determines that diversity jurisdiction exists over the claims asserted in the Amended Complaint, the Motion to Withdraw Reference be granted. Otherwise, this Court recommends that the Motion to Withdraw Reference be denied. If the Motion to Withdraw Reference is denied, this Court will dismiss the Amended Complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b).

## II. LEGAL ANALYSIS

28 U.S.C. § 157(d) governs withdrawal of the reference. Section 157(d) provides, in relevant part, that the district court may withdraw, "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." According to the Fifth Circuit in *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985), the following factors are relevant when a court rules on a motion to withdraw reference: (1) whether the matter involves core, non-core, or mixed issues; (2) whether or not there has been a jury demand; (3) the effect of withdrawal on judicial economy; (4) the effect of withdrawal on the goal of reducing forum shopping; (5) uniformity in bankruptcy administration; (6) the effect of withdrawal on fostering the economical use of the parties' resources; and (7) the effect of withdrawal on the goal of expediting the bankruptcy process.

However, an analysis of these factors is not terribly helpful here because of the unusual basis upon which Cataldi seeks a withdrawal of the reference of the Adversary Proceeding. As noted previously, Cataldi seeks a withdrawal of the reference in order to avoid a statute of limitations bar

to his re-filing of the claims asserted in the Amended Complaint in yet another lawsuit if this Court concludes it lacks subject matter jurisdiction over those claims. Cataldi is perfectly content having this Court try his claims, and believes that this Court has subject matter jurisdiction over those claims. However, in the event that this Court concludes that it lacks subject matter jurisdiction over the claims asserted in the Amended Complaint under 28 U.S.C. § 1334(b), and thus must dismiss the Adversary Proceeding, Cataldi wants the reference withdrawn before dismissal occurs, so that the District Court can exercise not bankruptcy jurisdiction under 28 U.S.C. § 1334(b), but rather diversity jurisdiction over those claims under 28 U.S.C. § 1332.

Bankruptcy Judge Steven A. Felsenthal ("Judge Felsenthal") addressed a motion to withdraw reference in an adversary proceeding with facts analogous to those present here a few years ago. In *Cadle Co. v. Pratt (In re Pratt)*, No. 03-03163, 2003 Bankr. LEXIS 1512 (Bankr. D. Tex. 2003), a Chapter 7 trustee filed an adversary proceeding on behalf of the debtor, alleging two claims against the defendant: one for fraudulent transfer under the Texas Uniform Fraudulent Conveyance Act and one for breach of fiduciary duty. *Id.* at *1. The trustee eventually sold all of the rights underlying the cause of actions in the adversary proceeding to a non-debtor entity, the Cadle Company. *Id.* at *2. The non-debtor entity then filed a motion to withdraw reference, contending that the bankruptcy court lacked subject matter jurisdiction but the District Court possessed diversity jurisdiction over the matter. *Id.*

Judge Felsenthal concluded that the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding because litigation between two non-debtor entities could not *conceivably* have an effect on the bankruptcy estate. *Id.* at *4-5. Judge Felsenthal further concluded that the District Court should itself address the question of whether it possessed diversity jurisdiction over

the pending claims. *Id.* at *6-7. Thus, in response to the motion to withdraw reference, Judge Felsenthal recommended that the District Court first determine whether it possessed diversity jurisdiction. *Id.* And then, if the District Court concluded it possessed diversity jurisdiction, the bankruptcy court recommended that the reference be withdrawn. *Id.* However, if the District Court concluded that it lacked diversity jurisdiction, then the bankruptcy court recommended that the motion to withdraw reference be denied and the bankruptcy court would grant the motion to dismiss. *Id.*

Judge Felsenthal further noted that federal courts generally retain subject matter jurisdiction once it is acquired; however, in certain circumstances a federal court can lose subject matter jurisdiction. *Id.* at *5 (citing *Carlton v. Baww, Inc.*, 751 F.2d 781, 785 (5th Cir. 1985)). For example, in a case where federal diversity jurisdiction exists, the addition of a non-diverse defendant destroys subject matter jurisdiction. *Id.* (citing *Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1227 (5th Cir. 1989)). According to Judge Felsenthal, it was thus appropriate for the bankruptcy court to reassess jurisdiction in light of the assignment of the causes of action. *Id.* at *6. Thereafter, the District Court concluded that diversity jurisdiction existed at the time the Cadle Company substituted into the adversary proceeding and ordered that the reference be withdrawn. Order, *Cadle Co. v. Pratt*, No. 3:30-VC-2273-N (N.D. Tex. 2004).

The approach recommended by Judge Felsenthal (and relied upon by the District Court) in *Cadle Co. v. Pratt* makes sense. Given the factual similarities between this case and the *Pratt* case, the undersigned judge will follow the *Pratt* approach.

Whether this Court has jurisdiction over the claims asserted in the Amended Complaint is controlled by federal statute; jurisdiction is not, as Cataldi contends in part, controlled by the

**Report and Recommendation**                                                                                                  **Page 8**

jurisdiction-retention provision of the Plan. *See In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002); *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3rd Cir. 2004). This Court derives its subject matter jurisdiction from 28 U.S.C. § 1334(b),[5] which provides in relevant part:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(b).

Section 1334 lists three types of proceedings over which the district court has jurisdiction – *i.e.*, those "arising under title 11," those "arising in" a case under title 11, and those "related to" a case under title 11. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987). "Related to" jurisdiction exists if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n.6 (1995) (discussing the Third Circuit test and noting its adoption by the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits); *In re Wood*, 825 F.2d at 93 (adopting the Third Circuit's definition). The Fifth Circuit has further stated that

> an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate. Conversely, the bankruptcy court has no jurisdiction over a matter that does not affect the debtor.

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 753 (5th Cir. 1995) (internal citations omitted). Proceedings "related to" the bankruptcy "include . . . suits between third parties *which have an effect on the bankruptcy estate*." *Celotex*, 514 U.S. at 308 n. 5 (citing 1 *Collier on Bankruptcy* ¶

---

[5] In the Amended Complaint and the Motion to Withdraw Reference, Cataldi incorrectly alleges subject matter jurisdiction exists under 28 U.S.C. § 157.

3.01[1][c][iv], at 3-28 (Lawrence P. King ed., 15th ed. 1994)) (emphasis added). Regarding third-party actions, the Fifth Circuit noted:

> [the] large majority of cases reject the notion that bankruptcy courts have 'related to' jurisdiction of third-party actions. Those cases in which courts have upheld 'related to' jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Conversely, courts have held that a third-party action does not create 'related to' jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate. Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy.

*Zale*, 62 F.3d at 753 (internal citations and footnotes omitted).

"Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11. *In re Wood*, 825 F.2d at 96. "Arising in" jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside bankruptcy. *Id.* at 97.

And finally, in the Fifth Circuit, once a plan of reorganization has been confirmed for a debtor, a bankruptcy court's jurisdiction ceases to exist except for matters pertaining to the implementation or execution of the plan. *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002). This is a narrower test for subject matter jurisdiction than the pre-confirmation test. *Id.* Thus, if this Court lacks pre-confirmation jurisdiction, it will also lack post-confirmation jurisdiction under the narrower test.

With this review of the bases for bankruptcy jurisdiction firmly in mind, and notwithstanding Olo's "withdrawal" of the Motion to Dismiss, this Court will address its subject matter jurisdiction over the claims asserted in the Amended Complaint. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989) (whether a court possess subject matter jurisdiction can be raised by a party

or on the court's own motion).  A motion to dismiss for a lack of subject matter jurisdiction "should

be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his

claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc. v. Madison*, 143 F.3d

1006, 1010 (5th Cir. 1998).  In other words, "[a] case is properly dismissed for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Id.*

(citing *Nowak v. Ironworks Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  Because a

court cannot adjudicate a claim brought by a party that lacks standing, standing is relevant to a

determination of whether a court possesses subject matter jurisdiction. *Xerox Corp.*, 888 F.2d at

345.  In light of these standards, the Court will analyze each of the claims asserted in the Amended

Complaint in order to determine whether the Court possesses subject matter jurisdiction.

### A.  Count 1

Count 1 of the Amended Complaint seeks to recover funds from Olo under Sections 549 and

550 of the Code.  In short, Cataldi alleges that the Debtor's payment for goods that Olo ultimately

refused to deliver was an unauthorized post-petition transfer of property under Section 549 of the

Code, which Cataldi can now recover under Section 550 of the Code.  While this Court normally has

subject matter jurisdiction over a cause of action arising under Sections 549 and 550, this Court does

not have subject matter jurisdiction over the cause of action as alleged by Cataldi for several reasons.

First, Cataldi failed to properly allege a cause of action under Section 549.  Section 549, in

relevant part, allows a trustee to avoid a transfer of property of the estate that (i) occurs post-petition

and (ii) is not authorized by the Code or the bankruptcy court.  11 U.S.C. § 549(a).  While Cataldi

properly alleges that the transfer of the $700,006.86 occurred post-petition, Cataldi misunderstands

the remaining elements of a proper Section 549 claim.  Here, the Debtor was a debtor-in-possession

at the time of the transfer. As such, the Debtor was authorized to conduct its business in the ordinary course of business. 11 U.S.C. § 363(c)(1). The Debtor's decision to purchase goods from Olo, and the Debtor's subsequent decision to pay for those goods, were ordinary course decisions for a retail debtor-in-possession. The fact that Olo failed to deliver the purchased goods after the Debtor paid for those goods does not make the Debtor's conduct "outside" the ordinary course of business. Rather, if the factual allegations underlying the Count 1 claim are true, Olo breached its contract with the Debtor. In other words, Cataldi attempts in Count 1 to recast a simple breach of contract claim as an unauthorized post-petition transfer claim under Section 549 of the Code in order to create bankruptcy jurisdiction. Such an attempt must fail.

Second, even if Cataldi did properly allege a cause of action under Section 549, Cataldi could not recover under Section 550 because the bankruptcy estate does not stand to benefit. Section 550 provides, in relevant part, that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 727(a) of this title, *the trustee* may recover, *for the benefit of the estate*, the property transferred." 11 U.S.C. § 550(a) (emphasis added). As Judge Felsenthal noted, when a trustee assigns all rights related to a cause of action the bankruptcy estate no longer stands to benefit from a recovery. *In re Pratt*, 2003 Bankr. LEXIS 1512 at *4-6. Thus, because the Debtor's bankruptcy estate does not stand to benefit economically from the outcome of this claim, the outcome can have no *conceivable* effect on the bankruptcy estate, which negates "related to" jurisdiction.

Moreover, as an assignee of the Trustee, Cataldi lacks standing to bring a claim under Section 550, which negates "arising under" jurisdiction. As noted above, Section 550(a) states that "the trustee" is entitled to recover the property improperly transferred for the benefit of the estate. 11

U.S.C. § 550(a).  The phrase "the trustee" appears in several other sections of the Code, and courts have interpreted its meaning narrowly.  For example, in *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, the Supreme Court discussed the meaning of "the trustee" as it appears in Section 506(c) of the Code.  530 U.S. 1 (2000).  In that case, an administrative claimant sought recovery under Section 506(c).  *Id.* at 1.  Section 506(c) provides, in relevant part: "*[t]he trustee* may recover from property securing an allowed secured claim the...costs and expenses of preserving, or disposing of, such property...."  11 U.S.C. § 506(c).  Both the bankruptcy and district courts found that the administrative claimant could recover under Section 506(c).  *Hartford Underwriters*, 530 U.S. at 1.  However, the Eight Circuit reversed, finding an administrative claimant could not invoke Section 506(c).  *Id.*  The Supreme Court affirmed the Eight Circuit.  *Id.* at 2.

In its opinion, the Supreme Court applied standard principles of statutory construction.  *Id.* at 6-7.  The Supreme Court noted that it must begin its analysis "with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'"  *Id.* at 6 (citing *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).  The Supreme Court further stated that when statutory language is plain, its "sole function" is to enforce the statute according to its terms, unless such an interpretation yields an absurd result.  *Id.* (citations omitted).  Applying these concepts to the phrase "the trustee," the Supreme Court held that it was quite clear that the trustee may seek recovery under Section 506(c).  *Id.*  Thus, the real issue was "whether it is a proper inference that the trustee is the only party empowered to invoke the provision."  *Id.*  The Supreme Court found, with "little difficulty," the answer to be "yes."  *Id.*

The Supreme Court began its statutory analysis by stating that "a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the

least appropriate in which to presume nonexclusivity." *Id.* at 7.  The Supreme Court bolstered this conclusion by focusing on the trustee's unique role in bankruptcy. *Id.*  Finally, the Supreme Court pointed to the fact that Congress used broader language elsewhere in the Code. *Id.*  For example, Section 502(a) used the phrase "a party in interest" and Section 503(b)(4) used the phrase "an entity," indicating Congress intentionally chose to limit who could recover under Section 506(c). *Id.*[6]  Congress' failure to use broad language indicated Congress intended to restrict the ability to seek recovery under Section 506(c).

There are several exceptions to the rule that "the trustee" means exclusively the trustee.  In *Hartford Underwriters*, the Supreme Court expressly reserved the validity of "derivative standing." *Id.* at 13 n.5.  Derivative standing is a situation in which a creditor or a creditors' committee seeks to bring avoidance actions when the trustee refuses to do so. *Id.*  This issue was subsequently addressed by the Third Circuit in *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3rd Cir. 2003).  The Third Circuit found such a derivative right does exist because the creditor or a creditors' committee pursues recovery "for the estate's direct benefit rather than its own." *Id.* at 569.[7]

Similarly, courts have used Section 1123(b)(3)(B)[8] to allow the appointment of a representative of the estate to bring causes of action reserved in the Code for "the trustee" under a plan of reorganization when the recovery "would benefit the debtor's estate and particularly the

---

[6] The remainder of the Court's analysis focused on issues that are not relevant here.

[7] The issue of derivative standing is not relevant here.

[8] Section 1123(b)(3)(B) provides "a plan may provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3)(B).

debtor's unsecured creditors." *Citicorp Acceptance Co., Inc. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1327 (10th Cir. 1989) (citations omitted) (allowing entity appointed in a plan of reorganization to seek recovery under Sections 544, 547, 549, and 553); *see also Winston & Strawn v. Kelly (In re Churchfield Management & Inv. Corp.)*, 122 B.R. 76 (Bankr. N.D. Ill. 1990) (allowing entity appointed in a plan of reorganization to seek recovery under Section 547).[9]

Finally, a debtor-in-possession has a statutory right to seek recovery through Section 1107, which gives a debtor-in-possession essentially all of the rights and duties of a trustee. *See* 11 U.S.C. § 1107.

Consequently, where an assignee of causes of action under Sections 547, 548, 549 and 550 is not a debtor-in-possession, is not an entity appointed in a plan of reorganization under Section 1123(b)(3)(B), or is not seeking derivative standing, courts have held that the assignee cannot pursue the assigned causes of actions because the statutory scheme of the Code reserves the ability to pursue the causes of action exclusively for "the trustee."[10] *Fleet Nat'l Bank v. Doorcrafters (MI of VT) (In re North Atlantic Millwork Corp.)*, 155 B.R. 271, 281 (Bankr. D. Mass. 1993) (creditor lacked standing to bring preference claims); *see also Met-Al, Inc. v. Gabor (In re Metal Brokers Int'l)*, 225 B.R. 920, 923-24 (Bankr. E.D. Wis. 1998) (assignee of trustee's causes of action under Section 547 and 548 lacked standing). Thus, even if Cataldi had pled a proper claim under Section 549 of the Code, he would not have standing to recover the unauthorized transfer under Section 550, negating "arising under" jurisdiction.

Absent "related to," "arising in," and/or "arising under" jurisdiction, Cataldi fails to state a

---

[9] In this case, Cataldi was not appointed under the Plan, so Section 1123(b)(3)(B) is not applicable.

[10] This bankruptcy court also recognized that the statutory scheme of the Code gives a debtor-in-possession the same powers as the trustee under Section 1107. *Id.*

**Report and Recommendation**                                                                 **Page 15**

claim under Sections 549 and 550 which this Court has the power to adjudicate, and therefore, this Court lacks pre-confirmation subject matter jurisdiction over the claim asserted in Count 1. Moreover, because the Court lacks pre-confirmation jurisdiction, under the more narrow jurisdictional test for post-confirmation jurisdiction, the Court also lacks post-confirmation jurisdiction. Thus, this Court lacks subject matter jurisdiction over the claim asserted in Count 1.

### B. Counts 2, 4, 6, and 7

Counts 2, 4, 6, and 7, alleging fraud, misappropriation, conversion, and unjust enrichment, respectively, are state law causes of action. By definition, state law claims do not "arise under" or "arise in" the Code. When the Chapter 11 Trustee originally filed the Adversary Proceeding, it was *conceivable* that the outcome could effect the bankruptcy estate, thereby creating "related to" jurisdiction over these claims. However, once the Chapter 11 Trustee sold the claims to Cataldi, the outcome of those claims could no longer *conceivably* have any effect on the bankruptcy estate, which eliminates "related to" jurisdiction. *See In re Pratt*, 2003 Bankr. LEXIS 1512 at *4-6. Consequently, because Cataldi fails to allege claims over which this Court has the power to adjudicate, this Court lacks pre-confirmation subject matter jurisdiction over the claims asserted in Counts 2, 4, 6, and 7 of the Amended Complaint. Moreover, under the more narrow jurisdictional test for post-confirmation jurisdiction, this Court also lacks post-confirmation subject matter jurisdiction.

### C. Count 3

Count 3 of the Amended Complaint seeks to recover funds under Sections 548 and 550 of the Code. While this Court has subject matter jurisdiction over causes of action arising under Sections 548, recovery is only possible under Section 550 of the Code. Although this Court

**Report and Recommendation**                                                          **Page 16**

normally has subject matter jurisdiction over causes of action arising under Sections 548 and 550 of the Code, this Court lacks jurisdiction here because any recovery on the Count 3 claim will only benefit Cataldi and not the Debtor's bankruptcy estate, which negates "related to" jurisdiction. Moreover, Cataldi lacks standing to bring a Section 548 claim under Section 550 because he is the assignee of the Chapter 11 trustee, which negates "arising under" jurisdiction. It also follows that if this Court lacks pre-confirmation subject matter jurisdiction, it also lacks post-confirmation subject matter jurisdiction.

### D. Count 5

Count 5 of the Amended Complaint seeks to recover funds under Sections 549 and 550 of the Code, alleging that the Debtor mistakenly transferred funds post-petition to Olo. For the same reasons discussed above, Cataldi cannot recover under Section 550 because a recovery would not benefit the Debtor's bankruptcy estate and Cataldi lacks standing, again negating both "related to" and "arising under" jurisdiction. Thus, this Court lacks subject matter jurisdiction over the claim asserted in Count 5.

### III. CONCLUSION

Here, as originally pled by the Chapter 11 Trustee, the New York Bankruptcy Court had subject matter jurisdiction over the claims asserted in the Complaint. However, the Chapter 11 Trustee sold his claims against Olo to Cataldi without any warranty that Cataldi could continue to prosecute them in the bankruptcy court. With the claims now held by Cataldi, the Amended Complaint involves a non-debtor litigating claims against a non-debtor over state law issues that will have no effect on the Debtor's bankruptcy estate, which was fully administered and closed over two years ago. *See id.* Under these changed circumstances, there is simply no jurisdictional basis for this

Court to now preside over the Adversary Proceeding.

For all of these reasons, this Court recommends that the District Court review the basis for federal jurisdiction over the Amended Complaint. If the District Court concludes that it has federal diversity jurisdiction, then this Court recommends that the Motion to Withdraw Reference be granted such that the District Court can adjudicate the claims asserted in the Amended Complaint based upon that diversity jurisdiction. If the District Court concludes that it lacks diversity jurisdiction, then this Court recommends that the Motion to Withdraw Reference be denied. If the Motion to Withdraw Reference is denied, this Court will dismiss the Amended Complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b).

Respectfully submitted,

Barbara J. Houser
Chief United States Bankruptcy Judge

I hereby certify that the foregoing is a true copy of the original thereof now in my office this the 21st day of June 2007 at Dallas, Texas
Tawana C. Marshall, Clerk
United States Bankruptcy Court
Northern District of Texas

By Marceey Mathews Deputy

**Report and Recommendation**                                                              **Page 18**